**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TAMARA ALLEN, | § | |
| *Plaintiff* | § | |
| | § | SA-24-CV-00157-XR |
| -vs- | § | |
| | § | |
| EXPERIAN INFORMATION | § | |
| SOLUTIONS INC,  USAA FEDERAL | § | |
| SAVINGS BANK, | § | |
| *Defendants* | § | |

**<u>ORDER</u>**

On this date, the Court considered Defendant USAA Federal Savings Bank's amended motion to compel arbitration (ECF No. 50), Plaintiff's response (ECF No. 58), and Defendant USAA Federal Savings Bank's reply (ECF No. 60). After careful consideration, the Court **GRANTS** Defendant USAA Federal Savings Bank's motion.

**BACKGROUND**

Plaintiff Tarama Allen had multiple credit cards with USAA Savings Bank, a subsidiary of Defendant USAA Federal Savings Bank ("USAA FSB"). ECF No. 64 ¶¶ 35–42; ECF No. 50 at 2. In her response, Plaintiff identifies three separate USAA credit card accounts: (1) the credit card account ending in 8888 (the "8888 Account") opened in 2006, (2) the credit card account ending in 8854 (the"8854 Account") opened in 2008, and (3) the credit card account ending in 9419 (the "9419 Account") opened in 2011. ECF No. 58 at 2. According to Plaintiff, a series of unauthorized charges were made on several of her USAA credit cards. *Id.* ¶¶ 36–40. Through an investigation, USAA FSB allegedly determined that Plaintiff's friend, Elisa Pasvogel ("Pasvogel"), was the "identity thief" and "had made the unauthorized charges." *Id.* ¶ 65. According to Plaintiff, prior to the alleged identity theft, Plaintiff's credit cards were not carrying a balance; only after the theft,

1

did Plaintiff's accounts allegedly begin carrying a balance due to the charges made by Pasvogel. *Id.* ¶ 46. Plaintiff alleges that Pasvogel was eventually charged with "fraudulently possessing items of identifying information belonging to [Plaintiff]." *Id.* ¶ 52.

According to Plaintiff, she began receiving collections letters for the debts accrued as a result of Pasvogel's unauthorized charges, and when she contacted USAA FSB regarding those letters, USAA FSB informed her that she remained responsible for Pasvogel's unauthorized charges. *Id.* ¶¶ 54–55. Plaintiff contends that she began disputing the debts on her credit reports with credit reporting agencies as well as with USAA FSB. *Id.* ¶¶ 56–62. Though TransUnion ultimately removed the debts from Plaintiff's credit reports due to the allegedly fraudulent charges, Experian refused to remove those debts as USAA FSB had verified to Experian that the charges were complete and accurate. *Id.* ¶¶ 68–80.

On September 12, 2023, Plaintiff filed suit in the Southern District of Texas alleging violations of the Fair Credit Reporting Act ("FCRA") against USAA FSB as well as Equifax Information Services, LLC and Experian Information Solutions, Inc. ECF No. 1.[1] Thereafter, the Southern District of Texas transferred the suit to this Court as it found this Court was the proper venue for the instant dispute. ECF Nos. 43, 44. Under Plaintiff's first amended complaint, Plaintiff asserts claims for willful and negligent violations of the FCRA against USAA FSB and Experian Information Solutions, Inc. ECF No. 64.

After transfer, USAA FSB moved to compel arbitration based on an agreement entered into between USAA Savings Bank and Plaintiff providing for arbitration of "Covered Claims" involving USAA Savings Bank, its employees, or its affiliates. ECF No. 50; ECF No. 50-4 at 4, 29–35. Pursuant to that agreement:

---

[1] On April 30, 2023, Plaintiff filed her first amended complaint, dropping Equifax Information Services, LLC as a named Defendant. *See* ECF No. 64.

A Covered Claim is (without limitation) any pre-existing, present, or future dispute, claim, or controversy that in any way arises out of or relates to:

- This Agreement as it has been or will be amended from time to time, or the scope, validity, and enforceability of any Terms (including the Universal Terms and Conditions, the Pricing Schedule, this Arbitration Addendum, and any other document we provide that indicates it is part of the USAA Credit Card Agreement).
- The Account or Account disclosures, including for example any application, advertisement, disclosure, promotion, or oral or written statement related to the Account, or the establishment, operation, or termination of your Account, whether occurring or made before your Account was opened or after it was closed or terminated.
- A Purchase, Balance Transfer, or Cash Advance, Convenience Check, interest, finance charge, fee, or other charge.
- A payment (or returned payment) or credit (or the failure to provide a credit).
- Your Account balance or any billing or collections matters relating to your Account.
- Any products, services, or benefit programs related to or offered in connection with your Account (including any insurance, debt cancellation, rewards program, rebates, sweepstakes, discounts, coupons, or benefits listed in your Account's Guide to Benefits).
- Our receipt, use, or disclosure of any information about you or your Account (including but not limited to any credit reporting or information sharing).
- The terms or method of financing (including the amount of fees, finance charges, or your credit limit).
- Any other matters relating to your Account or your past, present, or future relationship with us.

ECF No. 50-4 at 29–30.

## DISCUSSION

### I.    Legal Standard

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). In the absence of a valid clause delegating the

threshold issue of arbitrability to the arbitrator, both steps are questions for the Court. *Id.* Where the parties' contract delegates the question of arbitrability to the arbitrator, however, a court possesses no authority to decide whether the parties' dispute falls within the scope of the agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *TRC Envt'l Corp. v. LVI Facility Servs., Inc.*, 612 F. App'x 759, 762 (5th Cir. 2015). Hence, the party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

"Section 2 of the FAA provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (quoting 9 U.S.C. § 2). "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original) (interpreting Section 2). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Casarotto*, 517 U.S. at 687.

## II.     Analysis

### A.  Whether the Arbitration Provision Is Valid and Enforceable

In conducting the first inquiry, whether there is a valid arbitration agreement, courts "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010) and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). Federal courts have authority where a party questions the "very existence of a contract" containing the arbitration agreement. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

Courts "do not consider general challenges to the validity of the entire contract." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) (citing *Buckeye*, 546 U.S. at 449). Because an arbitration agreement is severable from the underlying contract under Section 2 of the FAA, a challenge "to the contract as a whole . . . does not prevent a court from enforcing a specific agreement to arbitrate." *Rent–A–Center*, 561 U.S. at 70. Thus, courts "must distinguish arguments regarding the validity of the arbitration agreement from arguments regarding the validity of a contract as a whole." *Lefoldt ex rel. Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P.*, 853 F.3d 804, 814 (5th Cir. 2017). The court is permitted to consider arguments about contract formation, including arguments that a contract was never formed. *Edwards*, 888 F.3d at 744. But once the court determines there is a valid arbitration agreement, the arbitrator must decide arguments that target the validity of the contract generally. *Id.*

Though the difference between formation and validity may be unclear at the margins, the Supreme Court has suggested that the category of arguments that question the very existence of an agreement include "whether the alleged obligor ever signed the contract, whether the signor lacked

5

authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent." *Kubala*, 830 F.3d at 201–02 (citing *Buckeye*, 546 U.S. at 444 n.1). "[U]nless the party 'challenge[s] the delegation provision specifically,' the Court 'must treat it as valid . . . and must enforce it . . . , leaving any challenge to the validity of the Agreement as a whole [i.e, the arbitration agreement] for the arbitrator.'" *Edwards*, 888 F.3d at 744 (quoting *Rent-A-Center*, 561 U.S. at 72).

Whether the parties entered a valid arbitration contract turns on state contract law. *Kubala*, 830 F.3d at 202; *see Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) ("[I]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement.").

Texas law provides that the party attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements. *Specialty Select Care Ctr. of San Antonio, L.L.C. v. Owen*, 499 S.W.3d 37, 43 (Tex. App.—San Antonio 2016). Under Texas law, "[t]he elements needed to form a valid and binding contract are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration." *Id.* When an arbitration agreement is part of an underlying contract, the rest of the agreement provides the necessary consideration. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005).

Here, USAA FSB contends that there is a valid agreement to arbitrate between Plaintiff and USAA FSB. ECF No. 50 at 5–6; ECF No. 58. Indeed, Plaintiff obtained her USAA credit cards through the credit card agreement she signed with USAA Savings Bank. *See* ECF No. 50-4. Under this agreement, Plaintiff agreed to arbitrate any "Covered Claim" involving USAA Savings Bank, its employees, or its affiliates. ECF No. 50-4 at 4, 29–35. To that end, Defendant USAA FSB submitted a declaration stating that it owns USAA Savings Bank. ECF No. 50-1.

Plaintiff, however, contends no valid and enforceable arbitration agreement exists between USAA FSB and Plaintiff as she was a covered borrower under the Military Lending Act ("MLA") at the time she opened the 8854 Account. ECF No. 58 at 6–8. According to Plaintiff, when she opened the 8854 Account on April 21, 2008,[2] she was a covered borrower under the MLA because she was 20 years old and a dependent of her father, an active member of the United States Army. *Id.* at 6–8.[3] To that end, Plaintiff argues that "[t]he MLA prohibits USAA from compelling [Plaintiff's] FCRA claims related to the account ending in 8854 opened April 21, 2008 to arbitration." *Id.* at 8. Further, Plaintiff contends, "[r]ather than splitting the claims against USAA on an account-by-account basis, the Court should deny arbitration in whole." *Id.*

In response, USAA FSB correctly identifies why the MLA does not preclude enforcement of the arbitration agreement here. Under the MLA's implementing regulations, credit cards were not covered under the MLA until 2017. *Compare* Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 72 Fed. Reg. 50,580, 50,587 (August 31, 2007) (to be codified as 32 CFR pt. 232) (explicitly discussing the exemption of credit cards under the previous version of 32 C.F.R. § 232.3) *with* Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 80 Fed. Reg. 43,560 (July 22, 2015) (to be codified as 32 CFR pt. 232) (discussing the applicability of updated regulations to credit cards). Further, the MLA's updated implementing regulations do not apply with retroactive effect to agreements entered into under the previous version of those regulations. *See* 32 C.F.R. § 232.12 ("Consumer credit that is extended to a covered borrower and consummated any time between October 1, 2007

---

[2] Plaintiff offers competing dates for the opening of the 8854 Account. *See* ECF No. 58 at 2, 8. That is, on one occasion, Plaintiff states that she opened the 8854 Account on April 21, 2008. *Id.* at 8. On another occasion, Plaintiff alleges that she opened the 8854 Account on May 23, 2008. *Id.* at 2.

[3] The Court observes that Plaintiff also asserts that she opened the 8888 Account in 2006 when her father was stationed in Germany. ECF No. 58-1 at 2. Thus, the Court construes Plaintiff's MLA argument to apply to both the 8854 Account and the 8888 Account.

and October 3, 2016 is subject to the definitions, conditions, and requirements of this part as were established by the Department and effective October 1, 2007."). Accordingly, given that the 8854 and 8888 Accounts were not covered by the MLA when opened and the MLA's implementing regulations do not apply retroactively to those accounts, the MLA does not preclude enforcement of the arbitration agreement here.[4]

Accordingly, the Court holds that there is a valid and enforceable arbitration agreement between Plaintiff and USAA FSB regarding the credit card accounts at issue in this suit.

### B.  Whether Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement

The second step of the arbitration analysis "involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala*, 830 F.3d at 201.  When an agreement to arbitrate contains a delegation clause, the courts should compel arbitration and need not consider arbitrability. *See Taggatz*, 2018 WL 11430810, at *2. As the Court does not identify any delegation clause in the agreement at issue, and the parties identify none, the Court must determine whether Plaintiff's claims against USAA FSB fall within the scope of the agreement.

Here, the Plaintiff's claims fall within the scope of the arbitration agreement. Arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. *AT&T Tech. v. Commc'n Workers of Am.*, 475 U.S. 643, 648–50 (1986). Where there is a broad arbitration clause, "it is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998). Under the arbitration agreement here, Plaintiff agreed to arbitrate "any pre-existing, present, or future dispute, claim, or controversy that in any way arises out of or relates to" (1) "[a] Purchase, Balance Transfer, or Cash Advance, Convenience Check, interest, finance

---

[4] The same can be said with respect to the 8888 Account. *See supra* note 3.

charge, fee, or other charge," (2) Plaintiff's "Account balance or any billing or collections matters

relating to [Plaintiff's] Account," and (3) "[USAA's] receipt, use, or disclosure of any information

about [Plaintiff] or [Plaintiff's] Account (including but not limited to *any credit reporting or*

*information sharing*)." ECF No. 50-4 at 29–30 (emphasis added). Though Plaintiff argues that that

her FCRA claims do not fall within the scope of the arbitration agreement because she is allegedly

not liable for the unauthorized use of her card and she "lost custody and control" of her accounts,

the Court finds Plaintiff's argument unpersuasive. Plaintiff's allegations do not remove her claim

from the scope of the arbitration agreement here. *See* ECF No. 50-4 at 29–30. Accordingly, the

Court will grant USAA FSB's motion and compel Plaintiff to arbitrate her claims against USAA

FSB.

### C.  Whether the Case Should be Dismissed or Stayed Pending Arbitration

The final issue is whether Plaintiff's claims should be stayed pending resolution of the

arbitration or dismissed. The FAA provides that courts shall enter a stay pending arbitration "on

application of one of the parties." 9 U.S.C. § 3; *see also Mayton v. Tempoe, LLC*, No. SA-17-CV-

179-XR, 2017 WL 2484849, at *6 (W.D. Tex. June 7, 2017) (explaining the stay requirement set

forth in Section 3 of the FAA). Thus, the court may not deny a stay in such a situation. "This rule,

however, was not intended to limit dismissal of a case in the proper circumstances. The weight of

authority clearly supports dismissal of the case when all of the issues raised in the district court

must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th

Cir. 1992) (collecting cases). In these situations, ordering a stay as opposed to a dismissal, would

serve no purpose because "[a]ny post-arbitration remedies sought by the parties will not entail

renewed consideration and adjudication of the merits of the controversy but would be

circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by

law." *Id.* (quoting *Sea-Land Serv., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986)).

Even in these circumstances, though, "dismissal is not required; rather, the district courts have discretion to do so, and also have discretion to stay the case or dismiss without prejudice." *Glazer's, Inc. v. Mark Anthony Brands Inc.*, SA-11-CV-977-XR, 2012 WL 2376899, at *6 (W.D. Tex. June 22, 2012) (citing *Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 331, n.9 (5th Cir. 2003)). Entry of a stay as opposed to a dismissal may be appropriate where "the district court perceives that it might have more to do than execute the judgment once arbitration has been completed." *Apache Bohai Corp.*, 330 F.3d at 309.

Here, while the Court will compel the claims against USAA FSB to arbitration, the Court will not compel the arbitration of Plaintiff's claims against Defendant Experian Information Solutions, Inc. Further, USAA FSB urges this Court to stay Plaintiff's claims against USAA FSB until the arbitration completes. ECF No. 50 at 9–10. Accordingly, the Court will stay Plaintiff's claims against USAA FSB in this action pending the completion of arbitration.

## CONCLUSION

For the foregoing reasons, Defendant USAA FSB's amended motion to compel arbitration (ECF No. 50) is **GRANTED**.

Accordingly, **IT IS ORDERED** that all of Plaintiff's claims against Defendant USAA FSB are hereby **COMPELLED** to arbitration.

**IT IS FURTHERED ORDERED** that that Plaintiff's claims against Defendant USAA FSB are hereby **STAYED** pending the completion of the arbitration.

**IT IS FURTHER ORDERED** that the parties file a joint advisory every sixty (60) days regarding the status of the arbitration, with the first advisory due on July 15, 2024.

It is so **ORDERED**.

**SIGNED** this 16th day of May, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE